STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

04-133


TRAVIS LEE STEVENS

VERSUS

DARREN KEITH BRUCE, ET AL.


**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 02-78596
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Glenn B. Gremillion, Judges.


**REVERSED AND REMANDED.**

R. Chadwick Edwards, Jr.
Edwards & Edwards
P. O. Box 217
Abbeville, LA 70511-0217
(337) 893-2884
Counsel for Plaintiff/Appellant
    Travis Lee Stevens
    Kim Stevens

**Charley Hutchens**
**1704 W. University Avenue**
**Lafayette, LA 70506**
**(337) 237-4102**
**Counsel for Defendants/Appellees**
    **Darren Keith Bruce**
    **Tina Elizabeth Bruce**

**Charles R. Minyard**
**P. O. Box 3642**
**Lafayette, LA 70502**
**(337) 266-2300**
**Counsel for Defendants/Appellees**
    **Minos Breaux**
    **Janet Breaux**

**Vincent J. Saitta**
**Colomb & Saitta**
**428 Jefferson Street**
**Lafayette, LA 70501**
**(337) 231-5250**
**Counsel for Defendants/Appellees**
    **Vesta Breaux Pellerin**
    **Judy Breaux Touchet**
    **Elaine Breaux Broussard**
    **Darrell Breaux**

GREMILLION, Judge.

The plaintiffs, Travis and Kim Stevens, appeal the judgment of the trial court sustaining an exception of prescription in favor of the defendants, Darren and Tina Bruce, and an exception of no right of action in favor of the defendants, Vesta Breaux Pellerin, Judy Breaux Touchet, Cynthia Breaux McAdams, Elaine Breaux Broussard, and Darrell Breaux (the Vesta Breaux defendants). For the following reasons, we reverse and remand.

## FACTS

The Stevens purchased their tract of property from the Bruces on October 25, 2000. Prior to that, the Bruces had purchased two tracts comprising the subject tract from the Vesta Breaux defendants and Minus and Janet Breaux (the Minus Breaux defendants), on June 25, 1998 and June 30, 1998, respectively. On October 21, 2001, the Stevens began excavating the tract in order to construct a pond and raise the elevation of the surrounding property prior to constructing a home. In doing so, they discovered several buried drums of hazardous waste, which had previously been placed there by John Broussard of Broussard Chemical, Inc., a previous co-owner and/or lessee of the property. The Stevens notified the Louisiana Department of Environmental Quality (DEQ), which later discovered other caches of buried hazardous waste. Due to the contamination caused by the hazardous waste, the Stevens have been prevented from utilizing their property.

On September 9, 2002, the Stevens filed a Petition in Redhibition against the Bruces and the Vesta Breaux defendants alleging that the presence of the hazardous waste on their property was a redhibitory defect pursuant to La.Civ.Code

1

art. 2520. They further alleged that the Bruces and the Vesta Breaux defendants knew that the Breaux property had been the subject of a DEQ investigation and that they failed to register the property with DEQ as required by La.R.S. 30:2039. Finally, the Stevens stated that had they known of Broussard Chemical's use of the property or that a DEQ clean-up site was located adjacent to this tract, they would not have purchased the property.

In response, the Vesta Breaux defendants filed a peremptory exception of prescription alleging that the Stevens' claim of redhibition had prescribed. In the alternative, they urged a peremptory exception of no right of action. The Bruces answered the petition and filed a cross claim against their ancestors-in-title to the first tract, the Vesta Breaux defendants, and a third party demand against their ancestors-in-title to the second tract, the Minus Breaux defendants. In response, the Minus Breaux defendants filed peremptory exceptions of prescription against the principal and third party demands and a peremptory exception of no cause of action against the Bruces. Thereafter, the Bruces filed a peremptory exception of no cause of action against the Stevens' claims.

Following a hearing on the exceptions, the trial court sustained the Bruces' peremptory exception of prescription and the Vesta Breaux defendants' peremptory exception of no right of action. The Stevens sought writs based on the trial court's judgment, however, this court denied their writ application as being premature since they had an adequate remedy through appeal. Thereafter, the Stevens moved for a final judgment in this matter; an order designating the rulings as final and appealable was rendered by the trial court on November 13, 2003. This appeal by the

2

Stevens followed.

**ISSUES**

On appeal, the Stevens argue that the trial court erred in sustaining the peremptory exceptions of prescription and no right of action.

**REDHIBITION**

An action in redhibition is found in La.Civ.Code art. 2520. A redhibitory defect is one which "renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale." La.Civ.Code art. 2520. A redhibitory action prescribes against a seller, who was unaware of the defect, four years from the date of delivery of the thing to the buyer or one year from the date of discovery of the defect by the buyer, whichever occurs first. La.Civ.Code art. 2543(A)(1). Louisiana Civil Code Article 2534(A)(2) provides that, "when the defect is of residential or commercial immovable property, an action for redhibition against a seller who did not know of the existence of the defect prescribes in one year from the day delivery of the property was made to the buyer."

In reviewing prescriptive statutes:

> Prescriptive statutes are strictly construed against prescription and in favor of the claim sought to be extinguished by it. *Bouterie v. Crane*, 616 So.2d 657 (La.1983); *Bustamento v. Tucker*, 607 So.2d 532 (La.1992). The burden of proof on the prescription issue lies with the party asserting it; however, where the petition shows on its face that the claim has prescribed, the burden shifts to the plaintiff to prove that the prescriptive period has been interrupted or suspended.

*Amoco Prod. Co. v. Texaco, Inc.*, 02-240, pp. 7-8 (La.App. 3 Cir. 1/29/03), 838 So.2d

3

821, 829, *writ denied*, 03-1102, 03-1104 (La. 6/6/03), 845 So.2d 1096.

The Stevens first argue that the trial court erred in transferring the burden of proof from the Bruces to them to prove that their cause of action had not prescribed.

The petition reveals that the Stevens purchased their tract of land from the Bruces on October 25, 2000. On October 10, 2001, they discovered the buried hazardous waste on their property and, thereafter, filed their redhibitory action against the Bruces on September 9, 2002. A review of the petition on its face reveals that the petition has prescribed. In the petition, the Stevens stated that they were utilizing the property for a homesite, thus, on its face, La.Civ.Code art. 2534(A)(2) would apply, as it appears that residential immovable property was involved. Since the petition has prescribed on its face, the burden of proof shifted to the Stevens to prove that the applicable prescriptive period was interrupted or suspended. We find no error in the trial court's requirement that the Stevens rebut the presumption of prescription.

The Stevens next argue that the trial court erred in holding that "residential" and "commercial" immovable property, as used in La.Civ.Code art. 2534(A)(2), applies to all sales of immovable property.

In sustaining the exception of prescription in favor of the Bruces, the judgment of the trial court states that "the legislative intent in creating a one (1) year prescriptive period for actions in redhibition relating to sale of *residential* and *commercial* immovable property under Civil Code Article 2534A.(2), applies to all sales of immovable property." We disagree.

4

The rules pertaining to statutory interpretation were recently laid out by the supreme court in *Palmer v. Louisiana State Board of Elementary and Secondary Education*, 02-2043, pp. 5-6 (La. 4/9/03), 842 So.2d 363, 367-68:

Principles of judicial interpretation of statutes are designed to ascertain and enforce the intent of the legislature in enacting the statute. *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000-1695 (La.6/29/01), 808 So.2d 294[c]iting *Stogner v. Stogner*, 98-3044, p. 5 (La.7/7/99), 739 So.2d 762, 766; *State v. Piazza*, 596 So.2d 817, 819 (La.1992). The fundamental question in all cases of statutory construction is legislative intent and the reasons that prompted the legislature to enact the law. *Succession of Boyter*, 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1128. When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written, with no further inquiry made in search of the legislative intent. La. C.C. art. 9; La. R.S. 1:4. However, when a law is susceptible of different meanings, "it must be interpreted as having the meaning that best conforms to the purpose of the law." La. C.C. art. 10.

The meaning and intent of a law is determined by considering the law in its entirety and all other laws concerning the same subject matter and construing the provision in a manner that is consistent with the express terms of the statute and with the obvious intent of the lawmaker in enacting it. *Bond, supra* at 302; *Boyter, supra* at 1129; *Stogner, supra* at 766. The statute must therefore be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the legislature had in enacting it. *Boyter*, 756 at 1129. Courts should give effect to all parts of a statute and should not adopt a statutory construction that makes any part superfluous or meaningless, if that result can be avoided. *Langlois v. East Baton Rouge Parish Sch. Bd.*, 99-2007 (La.5/16/00), 761 So.2d 504, 507; *Boyter*, 756 at 1129. Furthermore, "the object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result." *First Nat'l Bank of Boston v. Beckwith Mach. Co.*, 94-2065, p. 8 (La.2/20/95), 650 So.2d 1148, 1153 (quoting *Smith v. Flournoy*, 238 La. 432, 115 So.2d 809, 814 (1959)).

The starting point for the interpretation of any statute is the language of the statute itself. *Cat's Meow, Inc. v. City of New Orleans*, 98-0601, p. 15 (La.10/20/98), 720 So.2d 1186, 1198; *Touchard v. Williams*, 617 So.2d 885 (La.1993).

"Residential" is defined in Merriam Webster's Collegiate Dictionary, 996 (10th ed. 1993), as "used as a residence or by residents"; "restricted to or occupied by residences"; and "of or relating to residence or residences." "Residence" is defined as "a building used as a home." *Id.* "Commercial" is defined as "occupied with or engaged in commerce or work intended for commerce." *Id.* at 231. Blacks Law Dictionary, 270 (6th ed. 1990), defines "commercial" as "[r]elates to or is connected with trade and traffic or commerce in general; is occupied with business and commerce."

Considering these definitions, we find that residential property pertains to property used for residences or dwellings, whereas commercial property applies to areas where trade or business is conducted. Thus, immovable property may be classified as residential or commercial. However, these two types of classifications are not exclusive of the ways in which immovable property may be classified. Other types include agricultural, farm, or range land, park or recreational land, and swamp, marsh, or wetlands. Thus, strictly construing this statute against prescription and in favor of the Stevens' claim, we find that "residential" and "commercial" do not apply in all instances where immovable property is conveyed. Had the legislature intended such, it would have said "all immovable property." Accordingly, we find that classifications of immovable property exist other than residential and commercial.

At the hearing on the exceptions, counsel for the Stevens argued that the property at issue was raw, unimproved land. However, we find that whether the property was classified as residential or some other type of property, the Stevens' claim has not prescribed based on the application of the doctrine of contra non valentum.

6

In *Picard v. Vermilion Parish School Board*, 00-1222, pp. 3-6 (La.App. 3 Cir. 4/4/01), 783 So.2d 590, 594-95, *writ denied*, 01-1346 (La. 6/22/01), 794 So.2d 794, we stated with regard to contra non valentum:

> According to this theory, prescription does not begin to run until "a plaintiff either knew or should have known of a cause of action, even if that knowledge does not occur until long after the wrongful conduct at issue has occurred." *Simmons v. Templeton*, 97-2349, 98-43, p. 4 (La.App. 4 Cir. 11/10/98), 723 So.2d 1009, 1012, *writs denied*, 98-3050, 98-3060 (La.2/5/99); 738 So.2d 4, 738 So.2d 5. Louisiana jurisprudence considers *contra non valentum* to be "an exceptional remedy . . . in direct contradiction to the articles in the Civil Code" which must be "strictly construed." *Harsh v. Calogero*, 615 So.2d 420, 422 (La.App. 4 Cir.1993).
>
> Under Louisiana law, the doctrine of *contra non valentum* halts the running of prescription when the circumstances of the case fall into one of the four categories:
>
>> (1) when courts are legally closed; (2) when administrative or contractual restraints delay the plaintiff's action; (3) when the defendant prevents the plaintiff from bringing suit; and (4) when the plaintiff does not know nor reasonably should know of the cause of action.
>
> *In re Med. Review Panel Proceeding Vaidyanathan*, 98-0289 (La.App. 4 Cir.9/23/98); 719 So.2d 604, *writ denied*, 98-2674 (La.12/18/98); 732 So.2d 1238; *Chaney v. State Through the Department of Health and Human Resources*, 432 So.2d 256, 258-59 (La.1983). Although *contra non valentum* is a legal principle, its application to the facts of the case and a determination of whether or not the Plaintiffs were indeed prevented from filing their claim under one of the four circumstances is an issue of fact. Therefore, the trial court's finding of fact on this issue is subject to the manifest error, clearly wrong standard of review. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).
>
> . . . .
>
> The principles of contra non valentum do not halt the running of prescription "if the plaintiff's ignorance is the result of his own willfulness or neglect." *Matthews v. Sun Exploration & Prod. Co.*, 521 So.2d 1192, 1197 (La.App. 2 Cir.1988). That is, the plaintiff will be deemed to know what he could by "reasonable diligence" have learned. *Id.* Prescription runs from the time that the plaintiff has actual or

7

constructive knowledge of the act, which has been defined as "the time at which the plaintiff has information sufficient to excite attention and prompt further inquiry." *National Council on Compensation Ins. v. Quixx Temporary Serv., Inc.*, 95-725, p. 7 (La.App. 4 Cir. 11/16/95), 665 So.2d 120, 124. Prescription does not begin to run at the first indication that the plaintiff may have suffered harm, but rather it begins to run "when plaintiff has reasonable basis to pursue claim against specific defendant." *Jordan v. Employee Transfer Corp.*, 509 So.2d 420, 424 (La.1987). The heart of the inquiry into constructive knowledge is the **reasonableness** of plaintiff's inaction. *Id.*

Here, we find that the facts of this case fall squarely under the fourth category of contra non valentum. This category, known as the "discovery rule," provides that "prescription does not accrue against a party ignorant of its rights provided that ignorance is not willful, negligent or unreasonable." *Amoco Prod. Co.*, 838 So.3d at 830. In this instance, the Stevens purchased their tract of land from the Bruces and commenced excavating a pond one year later. It was at that time that they discovered the buried hazardous waste on their property. Thus, they were ignorant of their redhibition claim until they dug it up. After unearthing the hazardous waste, the Stevens filed suit against their ancestors in title within one year of their discovery. The judgment of the trial court finding that the application of contra non valentum was unavailable to the Stevens due to an absence of bad faith on the part of the Bruces is clearly wrong. Such a showing is not required by the discovery rule. Accordingly, we find that contra non valentum applied to suspend the running of prescription against the Stevens' claim. Since they filed their petition in redhibition within one year of their discovery of the buried hazardous waste, their petition was timely. The trial court's judgment sustaining the peremptory exception of prescription in favor of the Bruces is reversed, and this matter is remanded for further proceedings.

**RIGHT OF ACTION**

In their final assignment of error, the Stevens argue that the trial court erred in granting the peremptory exception of no right of action in favor of the Vesta Breaux defendants.

In *Hargroder v. Columbia Gulf Transmission Co.*, 290 So.2d 874, 875 (La.1974), the supreme court distinguished between an exception of no right of action and an exception of no cause of action:

> In *Roy O. Martin Lumber Co. v. St. Denis Securities Co.*, 225 La. 51, 72 So.2d 257 (1954), this Court distinguished the two exceptions as follows:
>
>> 'Generally speaking, an exception of no right of action serves to question the right of a plaintiff to maintain this suit, i.e., . . . his interest in the subject matter of the proceeding, whereas an exception of no cause of action addresses itself to the sufficiency in law of the petition and the exhibits attached thereto. *Outdoor Electric Advertising v. Saurage*, 207 La. 344, 21 So.2d 375; *Termini v. McCormick*, 208 La. 221, 23 So.2d 52 *and Bartholomew v. Impastato*, La.App., 12 So.2d 700. The latter is triable entirely on the face of the papers, while evidence may be received under an exception of no right of action **for the purpose of showing that plaintiff does not possess the right he claims or that the right does not exist**. *Soniat v. White*, 153 La. 424, 96 So. 19; *Schmidt v. Conservative Homestead Association*, 181 La. 369, 159 So. 587; *Duplain v. Wiltz, supra* (La.App., 174 So. 652) and *La Casse v. New Orleans, T. & M.R. Co.*, 135 La. 129, 64 So. 1012.'

(Emphasis added).

The trial court sustained the exception of no right of action and dismissed the Stevens' claim under La.R.S. 30:2039,[1] based on an absence of evidence relating

---

[1] Louisiana Revised Statute 30:2039 provides:

A. If a landowner has actual or constructive knowledge that his property:

(1) Has been used for the disposal of hazardous waste or as a solid waste landfill, except as provided in rules, and such wastes remain on the property, and if recording of the notice provided for herein is required by the Louisiana Solid Waste Regulations or the Louisiana Hazardous Waste Regulations;  or

to the Vesta Breaux defendants' knowledge of the hazardous waste located on their property. We reverse the trial court's finding as it went beyond the parameters of a hearing on an exception of no right of action. The Vesta Breaux defendants were limited to presenting evidence showing that the Stevens did not possess the right they claim or that the right did not exist. Here, the trial court enquired into the merits of the

(2) Has been identified by the department as an inactive or abandoned solid waste landfill or hazardous waste site,

he shall cause notice of the identification of the location of the waste site to be recorded in the mortgage and conveyance records of the parish in which the property is located. Such notice shall be made in a form approved by the secretary and within the time specified by the secretary. If a landowner fails or refuses to record such notice, the secretary may, if he determines that the public interest requires, and after due notice and an opportunity for a hearing has been given to a landowner, cause such notice to be recorded. The clerk of court shall forward to the Department of Environmental Quality a copy of each notice recorded by a landowner in accordance with this Subsection.

B. (1) If any person wishes to remove such notice, he shall notify the secretary prior to requesting the removal from the clerk of court in the parish where the property is located. The request shall specify the facts supporting removal of the notice, including any evidence that the waste no longer poses a potential threat to health or the environment. Upon finding that the waste no longer poses a potential threat to health or the environment, the secretary shall approve removal of the notice.

(2) If approval is granted by the secretary, the request may be made by affidavit to the clerk of court for the removal of the notice and it shall be removed. Within ten days after removal, the clerk of court shall send a notice of the removal to the secretary. If the secretary objects to the removal of such notice, or fails to make a final determination upon the request within ninety days, the person desiring to have the notice removed may petition the court in the parish where the property is located for removal of the notice and after a contradictory hearing between the landowner, the clerk of court, and the secretary or his designee, the court may grant such relief upon adequate proof by the petitioner that the property no longer contains the waste which may pose a potential threat to health or to the environment.

C. This Section shall not apply to any facility which is operating under a permit issued by the department until such time as such notice is required by an order of the secretary, by a permit, or by rule or regulation applicable to such facility.

D. The failure of a landowner to file the required notice may constitute grounds for an action in redhibition under the applicable provisions of Civil Code Articles 2520 et seq., unless the purchaser has actual or constructive knowledge that the property has been used for such purposes.

E. Any action under this Section must be commenced within one year from the date the purchaser first knows of the existence of the fact which gives rise to the action, but in any event within three years of the date upon which the purchaser acquired his ownership interest in the property. Venue shall be in any parish in which the property or any portion thereof is located.

10

matter by requesting evidence pertaining to their knowledge of the hazardous waste. This was error. The Stevens clearly have a right of action to bring this suit against the Vesta Breaux defendants. The judgment of the trial court is reversed and the matter is remanded for further proceedings.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court sustaining the peremptory exceptions of prescription and no right of action are reversed and this matter is remanded for further proceedings. The costs of this appeal are assessed fifty percent to the defendants-appellees, Darren and Tina Bruce, and fifty percent to the defendants/appellees, Vesta Breaux Pellerin, Judy Breaux Touchet, Cynthia Breaux McAdams, Elaine Breaux Broussard, and Darrell Breaux.

**REVERSED AND REMANDED.**