NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**08-0559**


**RAYEANNE OWENS, ET AL.**

**VERSUS**

**ENTERGY GULF STATES INCORPORATION, ET AL.**


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF LAFAYETTE, NO. 2004-3076
HONORABLE THOMAS DUPLANTIER, DISTRICT JUDGE

************

**JIMMIE C. PETERS**
**JUDGE**

************

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and J. David Painter, Judges.


**JURY VERDICT VACATED AND JUDGMENT RENDERED.**

**Louis R. Koerner, Jr.**
**Koerner Law Firm**
**Post Office Box 4297**
**Houma, LA 70361**
**(985) 580-0350**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Rayeanne Owens**

**George J. Armbruster III**
**The Panagiotis Firm**
**1540 West Pinhook Road**
**Lafayette, LA 70503**
**(337) 264-1516**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Rayeanne Owens**

**Kenneth W. Jacques**
**Law Office of Kenneth W. Jacques, APLC**
**201 St. Charles Avenue, Suite 4318**
**New Orleans, LA 70130**
**(504) 524-1954**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Rayeanne Owens**
    **Rene Owens**

**Joseph R. Ballard**
**Entergy Services, Inc.**
**Post Office Box 2431**
**Baton Rouge, LA 70821-2431**
**(225) 381-5887**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Entergy Gulf States, Inc.**

**Thomas R. Hightower, Jr.**
**Wade Kee**
**A Professional Law Corporation**
**Post Office Drawer 51288**
**Lafayette, LA 70505**
**(337) 233-0555**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Shelter Mutual Insurance Company**
    **Cathy Lyles, as owner of and as pertains to**
    **110 Brownlee Avenue**

PETERS, J.

The plaintiffs in this litigation, Rene and Rayeanne Owens, appeal a jury verdict rejecting their claim against the defendant, Entergy Gulf States, Inc. (Entergy). For the following reasons, we vacate and set aside the jury verdict, review the matter *de novo*, and render judgment in favor of Entergy, rejecting the plaintiffs' claims.

### DISCUSSION OF THE RECORD

In early June of 2003, the plaintiffs were occupying a house at 108 Brownlee Avenue in Broussard, Louisiana, having leased it from Kathy Lyles. At approximately that time, a hole, two feet in diameter and four to five feet deep, appeared on the property line between the property leased by the plaintiffs and the neighboring property at 110 Brownlee Avenue. This adjacent property was also owned by Ms. Lyles and was leased to Robert Broussard. The hole was located next to a junction box owned and maintained by Entergy and directly above a sewage line owned and maintained by the City of Broussard (the City).

On Monday, June 23, 2003, Mr. Owens fell into the hole while mowing his grass. After the accident, Entergy excavated the area around the hole and found that the City's sewer line had broken in two places and that the resulting leaking water created the hole in which Mr. Owens fell by slowly eroding the ground from beneath. This litigation represents an attempt by the plaintiffs to recover the damages they claim to have sustained when Mr. Owens fell into the hole. The plaintiffs brought suit against Ms. Lyles; Allstate Insurance Company, Ms. Lyles' insurer for the property leased by the plaintiffs; Shelter Mutual Insurance Company (Shelter), Ms. Lyles' insurer for the property leased by Mr. Broussard; Mr. Broussard; Liberty

Mutual Insurance Company (Liberty Mutual), Mr. Broussard's insurer for the property leased by him; the City of Broussard; and Entergy.

By summary judgment, Ms. Lyles, in her capacity as the owner of the property leased to Mr. Broussard, and Shelter were dismissed from the litigation.[1] The plaintiffs settled with all of the remaining defendants except Entergy, and the matter went to trial with Entergy as the lone defendant.

In answering the interrogatories propounded to it, the jury concluded that Mr. Owens did, in fact, fall into the hole on June 23, 2003, that there was "fault or negligence" on the part of Entergy, but that the fault or negligence of Entergy was not "a proximate cause of any damages sustained by [Mr.] Owens." After the trial court executed a judgment dismissing Entergy from the litigation, and after the trial court rejected the plaintiffs' motion for a judgment notwithstanding the verdict and/or new trial, the plaintiffs perfected this appeal, asserting two assignments of error:

1.     The district court erred in denying the post-trial motions and giving deference to the jury's determination that the plaintiffs should lose, even though the jury improperly filled out the jury verdict form, did not follow the district court's verbal instructions, refused to follow the written instructions contained on the jury verdict forms, found that the negligence of none of the current or settled parties was a proximate cause of any of Owens' injuries, did not assess fault among Entergy, Rene Owens, and City of Broussard, and improperly awarded no damages.

2.     The district court was in error in not finding that, based on the evidence, the verdict of the jury was also manifestly erroneous in denying recovery to the plaintiffs, in not making its own assessment of liability and damages, particularly as to City of Broussard, and in denying the alternative motion for a new trial.

---

[1]By a judgment issued after the trial in this matter took place, a panel of this court reversed the trial court's grant of summary disposition in favor of Ms. Lyles and Shelter and remanded for further proceedings. *Owens v. Entergy Corp.,* 07-616 (La.App. 3 Cir. 11/21/07), 970 So.2d 1212. Thus, the Owens' suit against Ms. Lyles, as the owner of 110 Brownlee Ave., and Shelter is still active. However, Ms. Lyles and Shelter did not take part in the trial or the appeal currently before us.

**OPINION**

We find merit in the plaintiffs' argument that the matter should be reviewed *de novo*. Misleading or confusing interrogatories may constitute reversible error, but the manifest error standard of appellate review still applies except where the jury interrogatories "are so inadequate or incorrect as to preclude the jury from reaching a verdict based on the law and the facts." *Doyle v. Picadilly Cafeterias*, 576 So.2d 1143, 1153 (La.App. 3 Cir. 1991). "If the trial court submits a verdict form to the jury with misleading or confusing interrogatories, just as when it omits to instruct the jury on an applicable essential legal principle, such interrogatories do not adequately set forth the issues to be decided by the jury and may constitute reversible error." *Bradbury v. Thomas*, 98-1678, p. 19 (La.App. 1 Cir. 9/24/99), 757 So.2d 666, 679, quoting *Diez v. Schwegmann Giant Supermarkets, Inc.*, 94-1089, p. 5 (La.App. 1 Cir. 6/3/95), 657 So.2d 1066, 1069 *writ denied*, 95-1883 (La. 11/17/95), 663 So.2d 720. When an appellate court finds that legal error in the trial judge's jury instructions prejudiced one of the parties, the appellate court should set aside the jury findings, perform a *de novo* review of the record, and render a judgment on the merits. *Oubre v. Eslaih*, 03-1133 (La. 2/6/04), 869 So.2d 71*; Fryson v. Dupre Transp., Inc.*, 00-858, 00-859 (La.App. 4 Cir. 8/29/01), 798 So.2d 1012, *writs denied*, 01-2684, 01-2685 (La. 12/14/01), 804 So.2d 631, 638.

Not only were the jury interrogatories in this matter confusing, but the answers provided to the interrogatories are irreconcilable. The interrogatories and the vote for each interrogatory is as follows:

1.   Do you find, by a preponderance of the evidence, that on June 23, 2003 Rene Owens fell into a hole?

     *10* Yes          *2* No

3

If your answer to No. 1 is "Yes", please go to No. 2.
If your answer to No. 1 is "No", please have the foreperson sign and date these Interrogatories and alert the bailiff.

2. Was there any fault or negligence on the part of Entergy Gulf States, Inc?

    _10_ Yes        _2_ No

    If your answer to No. 2 is "Yes", please go to No. 3.
    If your answer to No. 2 is "No", please go to No. 4.
    Additionally, if your answer to No. 2 is "No", you shall not apportion any amount of fault to Entergy Gulf States, Inc. in No. 7(a).

3. Was the fault or negligence of Entergy a proximate cause of any damages sustained by Rene Owens?

    __ Yes        _12_ No

    Please go to No. 4.

4. Do you find any of the following:

    a. Did the City of Broussard have custody or guarde [sic] of the pipe in question?

        _12_ Yes        __ No

    b. Did the pipe contain a defect or condition that created an unreasonable risk of harm?

        _12_ Yes        __ No

    c. Did that defect or condition cause the plaintiff's injury?

        __ Yes        _12_ No

    d. Did the City of Broussard know or should they have known of the defect?

        _12_ Yes        __ No

    e. Did they City of Broussard have a reasonable opportunity to remedy the defect and did they fail to do so?

        _11_ Yes        _1_ No

4

If you answered "No" to any of Nos. 4(a) - 4(e), you shall not apportion any fault to the City of Broussard in No. 7(b).

5. Was there any fault or negligence on the part of Rene Owens?

_12_ Yes           __ No

If your answer to No. 5 is "Yes", please go to No. 6.
If your answer to No. 5 is "No", please go to No. 7.
Additionally, if your answer to No. 5 is "No", you shall not apportion fault to Rene Owens in No. 7 (c).

6. Was the fault or negligence of Rene Owens a proximate cause of any damages sustained by Rene Owens?

__ Yes           _12_ No

Please go to No. 7.

7. Please assign a percentage of fault to each person or entity whom: (a) you find to be at fault; and (b) whose fault you find is a proximate cause of damages sustained by Rene Owens. Please note that the total must be 100%.

a. Entergy Gulf States, Inc.        _0_ %
b. City of Broussard              _0_ %
c. Rene Owens                    _0_ %

        Total                   _100_ %

Please go to No. 8

8. What sum(s) of money, without deduction for any comparative fault, if any, of the plaintiff, would adequately compensate Rene Owens for his losses, if any, for the following?
Past Medical Expenses              $_0_

Past, Present, and Future Earnings          $_0_

Past, Present and Future Mental and
Physical Pain, Anguish or Suffering       $_0_

Past, Present and Future Loss of
Enjoyment of Life _____$_0_

Please go to No. 9.

5

9. What sum(s) of money, [sic] would adequately compensate Rayeanne Owens for her loss of consortium?

_____ $ _0_

_____ When you have complete the answers to these Interrogatories, please have the foreperson sign and date the Interrogatories an alert the bailiff.

Entergy was the only defendant remaining in the litigation. Had the third interrogatory been followed by the instructive language found in the first interrogatories, the jury's deliberations would have ended at that point and this issue would not be before us.[2] Without that instructive language, the jury simply answered the remaining interrogatories. In doing so, it found that the City had the custody and control over the sewer pipe, that the pipe had a defect which the City had knowledge of and a reasonable time to fix, bit that the defect did not cause Mr. Owens' injuries. It further determined that Mr. Owens was at fault but that his fault was not a proximate cause of his injuries either. Thus, the jury determined that Mr. Owens suffered an accident, that everyone was at fault, but that no one was at fault in causing the accident.

Perhaps the jury found that the fall into the hole did not cause Mr. Owens any injuries; or that Mr. Owens' back and knee pain were the result of pre-existing injuries; or that Entergy's fault or negligence, committed over 20 years earlier, was not a proximate cause of Mr. Owens' accident; or even that the cause of Mr. Owens' accident was the negligence of the unknown party who created the second break in the sewer pipe. Unfortunately, the jury's conclusion cannot be determined from the information before us. In any event, whatever the jury's confusion may have been as

---

[2]The problems created by the remaining interrogatories would have been rendered moot had Interrogatory Number 3 been followed with the instructive language that:

If your answer to No. 3 is "Yes", please answer the remaining interrogatories.
If your answer to No. 3 is "No", please have the foreperson sign and date these Interrogatories and alert the bailiff.

6

to the interrogatories, the jury has rendered a verdict that is so internally inconsistent that it cannot be reconciled. Accordingly, we find that a *de novo* review is appropriate in this matter.

However, the conclusion that a *de novo* review is required does not equate to a finding of liability on the part of Entergy. Our *de novo* review leads us to the same ultimate conclusion that was apparently reached by the jury—that Entergy is not liable to the plaintiffs for their injuries.

At the trial there was considerable discussion about the size and depth of the hole, whether Mr. Owens knew about the hole before his accident, and how the hole was created. Mr. Broussard testified that on June 16, 2003, he measured the hole and that it was then four feet, three inches deep. He telephoned Entergy on that day and, sometime within the next two days, Joseph L. Stelly, Entergy's utility foreman, came to the property and inspected the hole. According to Mr. Stelly, at the time of his inspection, the hole was approximately fifteen to eighteen inches deep and approximately the same diameter. He acknowledged that nothing covered the hole, but he did nothing to repair or cover the hole. After Mr. Stelly's inspection, Mr. Broussard attempted to fill the hole, but without success as the hole continued to deteriorate. Mr. Stelly filed his report with his company, and an Entergy representative contacted Mr. Broussard and informed him that the hole was the City's problem.

Mr. Broussard testified that he telephoned the City to report the hole and that the city sent an employee to inspect the situation. However, in its October 14, 2004 answers to interrogatories, prepared with the assistance of Larry Champagne, the

7

City's supervisor for streets and maintenance, the City denied that it was notified of the hole before Mr. Owens' accident.

With regard to Mr. Owens' knowledge of the hole's existence, Mr. Broussard testified in a pretrial deposition that he did not recall whether he ever told Mr. Owens about the hole before the accident. However, in his trial testimony, Mr. Broussard testified that he had mentioned to Mr. Owens that the junction box was sinking. Mr. Owens denied having such a conversation with Mr. Broussard.

Entergy videotaped the post-accident excavation, and the videotape shows Entergy's crew explaining that a trenching machine belonging to the contractor who had installed Entergy's underground wiring some twenty-four years before Mr. Owens' accident had clipped the sewer pipe and caused a break in it. However, the excavation revealed a second break in the sewer pipe at a "Y" connection.

Walter Comeaux, a licensed civil engineer who was recognized by the court as an expert in civil engineering, was present when Entergy performed the excavation. He observed both breaks in the sewer pipe and was of the opinion that Entergy's contractor was responsible for the first break discovered in the excavation process. However, he was not of the opinion that the break at the "Y" connection was caused by the contractor's trencher. He suggested that the "Y" connection break could have occurred at a number of other times, including in 1993 when the houses were built on the land leased by Broussard, or in March of 2004 when the pipe was excavated. With regard to which break was the source of the erosion that caused the hole to appear, he stated that "[i]t could be either/or. You know, it could have – the erosion could have been caused by either [break], if both of them were there over a period of time."

8

In performing a *de novo* examination of the evidence, we must keep in mind that the first issue to be determined is whether Entergy has any fault in causing the accident. If not, we need not go any further. Entergy's fault, or lack of fault, is determined under a duty-risk analysis. This is a five-step process which requires that a party asserting fault on another establish: (1) that the party whose fault is at issue had a duty to conform his conduct to a specific standard, (2) that the party's conduct failed to conform to the appropriate standard, (3) that the party's conduct was a cause-in-fact of the injuries at issue, (4) that the party's substandard conduct was a legal cause of the injuries at issue, and (5) that there were actual damages. *Toston v. Pardon*, 03-1747 (La. 4/23/04), 874 So.2d 791. The plaintiff's failure to prove any of the elements of the duty-risk analysis results in a determination of no liability. *Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095 (La. 3/10/06), 923 So.2d 627.

Entergy's duty is to use reasonable care in the installation, operation, and maintenance of their electric lines. *Pillow v. Entergy Corp.*, 38,384 (La.App.2 Cir. 9/18/02), 828 So.2d 83, *writ denied*, 02-2575 (La. 12/13/02), 831 So.2d 987. The plaintiffs established that Entergy failed to meet that duty in that a trencher operated by an employee of a contractor retained to install its electric lines caused damage to a sewer pipe some twenty-four years before Mr. Owens' accident. However, we do not find that the plaintiffs established that Entergy's breach of its duty was a cause-in-fact of Mr. Owens' accident and resulting injuries. The cause-in-fact element of the duty-risk analysis generally involves a "but for" inquiry, which questions whether or not the injury would have occurred "but for" the defendant's substandard conduct. *Petre v. State ex rel. Dept. of Transp. & Dev.*, 00-545 (La.App. 3 Cir. 12/29/00), 775 So.2d 1252, *aff'd* 01-876 (La. 4/3/02), 817 So.2d 1107. "Where there are concurrent

9

causes of an accident, the proper inquiry is whether the conduct in question was a substantial factor in bringing about the accident." *Perkins v. Entergy,* 00-1372, p.8 (La. 3/23/01), 782 So.2d 606, 611. To satisfy this substantial factor test, the plaintiff must prove by a preponderance of the evidence that the defendant's conduct was a substantial factor in bringing about the harm complained of. *Young v. Fitzpatrick*, 03-1038, (La.App. 3 Cir. 2/4/04), 865 So.2d 969. The plaintiffs' level of proof failed in this regard.

Although Mr. Comeaux's testimony that the hole was caused by both breaks in the sewer pipe established that Entergy's negligence was at least in part a cause of the hole, the plaintiffs did not bear their burden of showing that this negligence was a substantial factor in bringing about their injuries. The plaintiffs established only that the sewer line break Entergy caused was one of two breaks that may have caused the hole. Entergy's negligence in causing the break was a very attenuated cause-in-fact, and Mr. Owens' accident and injuries were not a foreseeable consequence of that negligence.

Accordingly, because we find that the plaintiffs failed to prove the cause-in-fact element of their negligence case, we find no liability on the part of Entergy.

## DISPOSITION

We set aside the jury verdict, perform a *de novo* review of the record, and render judgment against the plaintiffs, Rene and Rayeanne Owens, and in favor of the

defendant, Entergy Gulf States, Inc., dismissing the plaintiffs' suit against the said defendant. We assess all costs of this appeal to the plaintiffs, Rene and Rayeanne Owens.

**JURY VERDICT VACATED AND JUDGMENT RENDERED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.